**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHAEL VACCARO, DOUGLAS VINCENT O'DELL, and AFSHIN MIKAILI, individually, and as representatives of a Class of Participants and Beneficiaries of The Pearson Retirement Plan,<br><br>          Plaintiffs,<br><br>          v.<br><br>PEARSON EDUCATION, INC., and the ADMINISTRATIVE COMMITTEE FOR THE BENEFIT PLANS OF PEARSON EDUCATION, INC.,<br><br>          Defendants. | Case No. 1:24-cv-09744-JAV<br><br>Class Action Amended Complaint For Claims Under 29 U.S.C. § 1132(a)(2) |

**CLASS ACTION AMENDED COMPLAINT**

Plaintiffs, Michael Vaccaro, Douglas Vincent O'Dell, and Afshin Mikaili ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of The Pearson Retirement Plan ("Plan" or "Pearson Plan"), by their counsel, WALCHESKE & LUZI, LLC and SCHNEIDER WALLACE COTTRELL KONECKY LLP, allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

**INTRODUCTION**

1.      401(k) defined contribution plans such as The Pearson Retirement Plan ("Pearson Plan") have become America's primary retirement savings vehicle. As with all defined contribution retirement plans that require participants to bear the costs of plan administration, the Plan participants' retirement savings suffer when the Plan fiduciaries mismanage plan assets, when employers use Plan assets for their own benefit, or pay excessive plan recordkeeping and administrative ("RKA") fees.

2.    Defendants Pearson Education, Inc. ("Pearson") and the Administrative Committee for the Benefit Plans of Pearson Education, Inc. ("Plan Committee") (collectively, "Defendants"), utilized the Plan's forfeitures, a type of plan asset to benefit themselves by reducing their future employer contributions to the Plan, violating ERISA's fiduciary duties of loyalty, prudence, and failure to follow the Plan document, as well as the fiduciary and party-in-interest prohibited transaction rules.

3.    Recognizing their unlawful forfeiture allocation practices, on October 23, 2024, the Plan Committee sought to back-date its Plan forfeitures amendments almost three years to January 1, 2022, to cover up their past unlawful conduct. Needless to say, such a back-dated, Plan amendment would not be necessary if the Plan Committee had been operating the Plan consistently with the Plan document language from January 1, 2022, to October 23, 2024.

4.    Furthermore, the Plan offered participants the opportunity to have the investment of their accounts managed by independent investment advisor ("managed account" or "MA" services) but Defendants failed to implement a prudent fiduciary process to control the Pearson Plan's overall managed account ("MA") expenses, and Plan participants in the MA program paid vastly more than what comparable and very large retirement plans paid for materially similar MA services.

5.    Plaintiffs, current and former participants in the Pearson Plan, bring this ERISA action in a representative capacity on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2), and under Fed. R. Civ. P. 23 as representatives of a class of participants and beneficiaries of the Pearson Plan, against Defendants for breaches of the duties of loyalty, prudence, for failure to follow the Plan document, and failure to monitor, as well as for fiduciary and parties-in-interest transactions prohibited by ERISA, and for breach of the fiduciary of prudence and monitor with regard to excessive fees associated with Plan managed accounts.

6.    Plaintiffs' claims are brought on behalf of the Plan and seek equitable remedies for losses suffered by the Plan under 29 U.S.C. §§ 1132(a)(2) and 409(a).

7.    More specifically, and as set forth in more detail below, Plaintiffs allege that Defendants: (a) improperly utilized forfeited Plan assets to disloyally reduce future employer contributions for their own selfish interests; (b) did not engage in a prudent process when deciding to

use Plan forfeitures for the employer's own benefit rather than to reduce Plan administrative expenses; (c) failed to followed the Plan document and had to back-date a Plan amendment almost three years to cover its past violative forfeiture practices; (d) failed to monitor those responsible on the Plan Committee for allocation of Plan forfeitures; (e) engaged in party-in-interest fiduciary prohibited transactions by enriching themselves through Plan forfeitures; (f) engaged in fiduciary prohibited transactions by favoring their own accounts with Plan forfeitures; (g) paid excessive fees with regard to the Pearson Plan's Personal Management Program ("PMP") MA services;  and (h) failed to monitor those responsible on the Plan Committee with regard to the excessive Plan MA services.

## JURISDICTION AND VENUE

8.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this is an action under 29 U.S.C. §§ 1132(a)(2) and (3) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

9.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

10.     This district is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred here

## PARTIES AND THE PLAN

11.     Pearson Education, Inc., known since 2011 as simply Pearson, is an educational publishing and services subsidiary of the international corporation Pearson plc. As of 2023, Pearson Education has testing/teaching centers in over 55 countries worldwide; the UK and the U.S. have the most centers. The headquarters of parent company Pearson plc are in London, England. Pearson is headquartered in the United States at 221 River Street, Hoboken, NJ 07030, but has hundreds of employees working at 100 William Street, Suite 1200, New York, NY 10038, 19 W 44th St, Ste 507, New York, NY 10036, and 330 Hudson St floor 9, New York, NY 10013, to name just several New York-based locations.

12.    The Pearson Plan is a defined contribution employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).

13.    Pearson is the Plan's sponsor under 29 U.S.C. § 1002(16)(B).

14.    The Plan Committee is the Plan's administrator within the meaning of 29 U.S.C. § 1002(16)(A), and the Committee is a fiduciary for the Plan. In addition, the members of the Committee (the Plan Committee Members) are also fiduciaries for the Plan. "[W]here, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the company." *See Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1156 (9th Cir. 2000).

15.    As required by 29 U.S. C. § 1102(a)(1), the Plan is established and maintained by a written plan document, The Pearson Retirement Plan as Amended and Restated Effective January 1, 2021 ("Plan document"). The Plan documents also has various Plan Amendments, the most relevant being Amendment 2024-1 to The Pearson Retirement Plan, dated October 23, 2024 ("Amendment 2024-1").

16.    Defendants chose Great-West Financial Retirement Plan Services and its operating subsidiary, Empower Retirement ("Empower"), to provide Plan recordkeeping services during the Class Period.

17.    Defendants chose Empower Advisory Group ("EAG"), a wholly-owned subsidiary of Empower, to provide MA services, subadvised by Edelman Financial Engines ("Financial Engines"), to Plan participants through the Professional Management Program ("PMP") during the Class Period.[1]

18.    Plaintiff Michael Vaccaro is a resident of Buchanan, New York. Plaintiff Vaccaro worked for Pearson as a Sales Representative, Marketing Manager, Director of International Marketing, Director of Business Development, remotely and in Upper Saddle River, NJ from May 1998 until July 2016.  While in the Plan, he participated in the PMP MA program. He rolled out of the Plan on March 31, 2021.

---

[1] Empower Advisory Group, LLC ("EAG"), the plan MA provider, is a wholly owned direct subsidiary of Empower Services Holdings US, LLC ("ESH US"), which, in turn, is owned by Empower Annuity Insurance Company of America ("Empower"), the Plan recordkeeper. EAG and Empower make up one entity.

19.     Plaintiff  Douglas Vincent O'Dell is a resident of North Wales, Pennsylvania. He had been employed by Pearson from April 2021 until June 2022 as Senior Director of Product Design. He rolled out of the Plan on January 10, 2023.

20.     Plaintiff Afshin Mikaili is a resident of Willowbrook, Illinois.  He was employed by Pearson from November 2012 to July 2023. He worked in Elk Grove Village, Illinois, from 2012-2020 and remotely from Willowbrook, Illinois from 2020 to 2023, in the positions of Managing Director, Academic Partnerships, and as Director, Partner Success. He enrolled in the Plan in 2012 and is a current participant in the Plan.

21.     Plaintiffs have Article III standing to bring this action on behalf of the Pearson Plan because they suffered actual injuries to their Plan accounts by not having forfeited Plan assets reallocated to their Plan accounts as a result of Pearson reducing employer contributions for their own benefit and Plaintiff Vaccaro also has standing with regard to paying excessive MA fees. Those injuries are fairly traceable to Defendants disloyally using Plan forfeitures for their own benefit to reduce their future contributions to the Pearson Plan and by imprudently paying excessive MA fees. Finally, these injuries diminished the savings in Plaintiffs' retirement accounts in the Plan and reduced, dollar for dollar (and more when compounded) Plaintiffs' retirement savings.

22.     Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

23.     The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the excessive MA fees, as well as the misuse and misallocation of Plan forfeitures) necessary to understand that Defendants breached their fiduciary duties and engaged in prohibited transactions until shortly before this suit was filed.

24.     Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of the excessive MA fees, and of the misuse and misallocation of Plan forfeitures.

25.    With 19,135 active participants and $2,271,435,898 in assets under management as of December 31, 2023, the Pearson Plan is one of the largest retirement plans in the country. It ranks in the top 0.10% of over 500,000 401(k) plans in terms of the number of participants and the top 0.10% of plans in terms of the value of its assets.

## ERISA FIDICIARY AND PROHIBITED TRANSACTION STANDARDS

26.    ERISA exists, in large part, to protect the interests of participants, and their beneficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).

27.    "[A]ny person who exercises discretionary authority or control in the management or administration of an ERISA plan" is, under the statute's terms, a fiduciary. *See Barchock v. CVS Health Corp.,* 886 F.3d 43, 44 (1st Cir. 2018) (citing 29 U.S.C. § 1002(21)(A)).

28.    ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the Pearson Plan, that are covered by ERISA.

29.    ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

30.    Additionally, ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

31.    These fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

32.    The obligation to ensure that retirement plan fees are reasonable is at the heart of ERISA fiduciary duties. *Marshall v. Snyder*, 572 F.2d 894, 897 (2d Cir. 1978) ("The responsibility for paying reasonable compensation was the unequivocal fiduciary responsibility of the [plan's fiduciaries].").

33.    The continuing duty to monitor is a subset of the duty of prudence, *Tibble v. Edison Int'l*, 575 U.S. 523, 529–30 (2015), and requires a plan fiduciary to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." *See Hughes v. Northwestern University*, 63 F.4th 615, 626 (7th Cir. 2023) ("*Hughes II*") (quoting RESTATEMENT (THIRD) OF TRUSTS § 90(c)(3)).

34.    "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 575 U.S. at 525.

35.    Plan fiduciaries have a continuing duty to monitor Plan MA expenses to make sure that they are not excessive relative 'to the services rendered,'" or to provide allegations "concerning other factors relevant to determining whether a fee is excessive under the circumstances." *Singh v. Deloitte LLP*, 123 F.4th 88, 93–94 (2d Cir. 2024).

36.    The inquiry into the duty of prudence is "context specific." *Id*. at 93.

37.    ERISA's duty of prudence applies to the conduct of the plan fiduciaries in negotiating MA fees based on what is reasonable (not the *cheapest* or *average*) in the applicable market.

38.    Defendants are ERISA fiduciaries as they exercise discretionary oversight, authority, or control over the Pearson Plan that it sponsors and provides to its employees.

39.    Defendants failed to fulfill their duty to prudently control the MA expenses paid by the Plan or the manner in which forfeitures were utilized by the Plan.

40.    Pearson is a party-in-interest because it is an employer "any of whose employees are covered by such plan." *Id.*, § 1002(14)(C).

41.    Moreover, because Defendants are fiduciaries of the Plan and "deal[t] with the assets of the plan in [their] own interest or for [their] own account," they violated the fiduciary duty of loyalty and engaged in prohibited transactions under both 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. §

1106(b)(1), by benefiting themselves as far as reducing their own future contributions to the Pearson Plan.

## FACTUAL ALLEGATIONS

### A.    Pearson's Disloyal, Imprudent, and Prohibited Uses of Plan Forfeitures.

42.    The Pearson Plan is funded by a combination of wage withholdings by Plan participants and Company matching and non-elective contributions, each of which is deposited into the Plan's trust fund.

43.    Pearson is obligated to make contributions that match employee contributions. The matching formula currently used is 100% of the first 3% of pay, plus 50% of the next 4-8% of pay employees contribute to the Plan each pay period.

44.    In accordance with 29 U.S.C. § 1103(a), the assets of the Pearson Plan are held in a trust fund. Upon their deposit into the Plan's trust fund, all participant contributions and Company contributions become *assets of the Plan*.

45.    The fiduciary duties of prudence, loyalty, and failure to follow plan terms, as well as the duty to refrain from self-dealing, under ERISA, are violated where, as here, the employer (1) is both the plan sponsor and plan administrator; (2) is faced with a conflict of interest in choosing between allocating plan assets toward offsetting its own contributions to the plan or defraying plan expenses that would otherwise be borne by plan participants; (3) fails to conduct any investigation as to which choice would be in the best interest of the participants; (4) acts contrary to the express provisions of the Plan; and (5) decides to allocate a portion of those plan assets toward reducing its own plan contributions because that choice best serves its own interests.

46.    Plaintiffs were all "participants" in a defined-contribution plan under ERISA Section 3(7), 29 U.S.C. § 1002(7) during the Class Period: The Pearson Plan.

47.    As an individual account, defined contribution retirement plan, the Pearson Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture

of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

48. Participants are fully vested in their salary deferrals plus actual earnings thereon. Vesting in Employer contributions is based on years of qualified service and vest fully after three years of service.

49. Forfeitures are the nonvested portion of a participant's account that is lost upon termination of employment.

50. The Pearson Plan gave the Plan Committee a discretionary choice about how to use the forfeitures each year.

51. More specifically, the relevant part of Section 6.2 of the 2021 Plan document ("Forfeiture of Nonvested Balance") states as follows:

> The amount forfeited shall be used (i) to pay Plan expenses, (ii) to make restoration to a Participant's Account in accordance with the last sentence of this Section 6.2, and/or (iii) reduce future Employer contributions under Section 4.2.

52. In other words, setting aside the restoration language, the Plan Committee had the discretion to allocate the forfeited funds to pay Plan expenses, thereby saving the Participants (who otherwise pay those expenses) money, or the Plan Committee could elect to use the forfeited funds to reduce Pearson's own contributions to the Plan, thereby acting in Pearson's own best interest.

53. When Defendants decided to reduce employer contributions, it was a discretionary, fiduciary decision.

54. Similarly, the 2021 version of The Pearson Plan Summary Plan Description ("SPD") states:

> **Forfeiture of Nonvested Amounts**
> If you leave the Company or a related company before you are 100% vested in your Plan account, the nonvested portion of your account will be forfeited and *either* used to pay Plan expenses *or* applied to future Company contributions. (emphasis added).

55. On October 23, 2024, the Plan Committee adopted an amendment, Amendment 2024-1, which amended the Section 6.2 forfeiture provisions:

> The amount forfeited will be used (i) first, to pay Plan expenses, (ii) second, to the extent that such amount forfeited cannot be used in accordance with (i) above, to reduce future Employer contributions under Section 4.2, and then (iii) third, to the extent that such amount forfeited cannot be used in accordance with (i) or (ii) above, to make restoration to a Participant's Account in accordance with the last sentence of this Section 6.2

56.    Even though this Amendment was dated October 23, 2024, the Amendment states that "Section 6.2 of the Plan is hereby amended, *effective January 1, 2022*, by changing the third sentence therein to read as follows." (emphasis added).

57.    In the Resolution to Amendment 2024-1, the Plan Committee states that "the Committee wishes to amend the Plan . . . (ii) effective January 1, 2022, to modify the permitted used for the Plan's forfeiture account *to conform with past administrative practice*." (emphasis added).

58.    The backdating of Amendment 2024-1 by almost three years (from October 23, 2024 to January 1, 2022) makes clear that the Plan Committee was applying the Plan provisions during that time period in a manner inconsistent with the Plan language, else there would be no need to amend the Plan language through a back-dated amendment

59.    In  2019, the Financial Statement Notes attached to the 2019 Form 5500 (page 29 of 40) states: "At December 31, 2019 and 2018, net assets available for benefits include unallocated amounts totaling $6,709,536 and $7,429,658 respectively, which represent pre-funded employer contributions and forfeited nonvested accounts. Forfeited nonvested accounts *may be used* to reduce future employer contributions. During 2019 and 2018, employer contributions were reduced by $5,256,935 and $2,149,239 respectively, from forfeited nonvested accounts." (emphasis added).

60.    This language, consistent both with the applicable Plan and SPD language, makes clear that the Plan Committee had fiduciary discretion to use the Plan forfeited funds for employer contributions or for other purposes, but used Plan forfeitures in a discretionary matter to pay for employer contributions. The Plan Committee in 2019 did not use that money to reduce Plan expenses, which would have benefitted participants rather than Pearson.

61.    In  2020, the Financial Statement Notes attached to the 2020 Form 5500 (page 29 of 40) states: "At December 31, 2020 and 2019, net assets available for benefits include unallocated amounts

totaling $7,128,622 and $6,709,536 respectively, which represent pre-funded employer contributions and forfeited nonvested accounts. Forfeited nonvested accounts **may be used** to reduce future employer contributions. During 2020 and 2019, employer contributions were reduced by $4,895,153 and $5,256,935 respectively, from forfeited nonvested accounts." (emphasis added).

62.    This language, consistent both with the applicable Plan and SPD language, makes clear that the Plan Committee had fiduciary discretion to use the Plan forfeited funds for employer contributions or for other purposes, but used Plan forfeitures in a discretionary matter to pay for employer contributions. The Plan Committee in 2020 did not use that money to reduce Plan expenses, which would have benefitted participants rather than Pearson.

63.    In 2021, the Financial Statement Notes attached to the 2021 Form 5500 (page 32 of 43) states: "At December 31, 2021 and 2020, net assets available for benefits include unallocated amounts totaling $7,431,172 and $7,128,622 respectively, which represent forfeited nonvested accounts. Forfeited nonvested accounts **may be used** to reduce future employer contributions. During 2021, employer contributions related to the year ended December 31, 2020 were reduced by $3,935,560. During 2020, employer contributions related to the year ended December 31, 2019 were reduced by $4,895,153. Subsequent to year end, employer contributions related to the year ended December 31, 2021, were reduced by $1,691,297." (emphasis added).

64.    This language, consistent both with the applicable Plan and SPD language, makes clear that the Plan Committee had fiduciary discretion to use the Plan forfeited funds for employer contributions or for other purposes, but used Plan forfeitures in a discretionary matter to pay for employer contributions. The Plan Committee in 2021 did not use that money to reduce Plan expenses, which would have benefitted participants rather than Pearson.

65.    In 2022, the Financial Statement Notes attached to the 2022 Form 5500 (page 30 of 38) states: "At December 31, 2022 and 2021, net assets available for benefits include unallocated amounts totaling $9,484,256 and $7,431,172 respectively, which represent forfeited nonvested accounts. Forfeited nonvested accounts **may be used** to reduce future employer contributions and are also held to restore accounts for participants who return to employment. During 2022, employer contributions

related to the year ended December 31, 2021 were reduced by $3,513,392. During 2021, employer contributions related to the year ended December 31, 2020 were reduced by $3,935,560." (emphasis added).

66.    This language, consistent both with the applicable Plan and SPD language [prior to the Oct. 24 Amendment, which seemed to remove the discretion to offset contributions first], makes clear that the Plan Committee had fiduciary discretion to use the Plan forfeited funds for employer contributions or for other purposes including "to restore accounts for participants who return to employment," but used Plan forfeitures in a discretionary matter to pay for employer contributions. The Plan Committee in 2022 did not use that money to reduce Plan expenses, which would have benefitted participants rather than Pearson.

67.    Additionally, under Plan Amendment 2024-1, which was backdated to be effective January 1, 2022, the Plan Committee failed to follow the applicable Plan language by "first, . . . pay[ing] Plan expenses," before reducing employer contributions.

68.    In 2023, the Financial Statement Notes attached to the 2023 Form 5500 (page 31 of 40) states: "At December 31, 2023 and 2022, net assets available for benefits include unallocated amounts totaling $8,430,065 and $9,484,256 respectively, which represent forfeited nonvested accounts. Forfeited nonvested accounts *may be used* to reduce future employer contributions and are also held to restore accounts for participants who return to employment. During 2023, employer contributions related to the year ended December 31, 2022 were reduced by $5,107,012. During 2022, employer contributions related to the year ended December 31, 2021 were reduced by $3,513,392." (emphasis added).

69.    This language, consistent both with the applicable Plan and SPD language, makes clear that the Plan Committee had fiduciary discretion to use the Plan forfeited funds for employer contributions or for other purposes including "to restore accounts for participants who return to employment," but used Plan forfeitures in a discretionary matter to pay for employer contributions. The Plan Committee in 2023 did not use that money to reduce Plan expenses, which would have benefitted participants rather than Pearson.

70.     Additionally, under Plan Amendment 2024-1, which was backdated to be effective January 1, 2022, the Plan Committee failed to follow the applicable Plan language by "first, . . . pay[ing] Plan expenses," before reducing employer contributions.

**B.    Defendants Breach Their Fiduciary Duties and Engaged in Prohibited Transaction By Exclusively Using Plan Forfeitures to Reduce Their Plan Contributions.**

71.     The following table illustrates the amount the Plan and its participants (including Plaintiffs) lost in potential Plan expenses being paid through forfeitures (which includes recordkeeping, managed account, and other administrative fees) as a result of Defendants' using Plan forfeitures *exclusively* for their own benefit during from 2018 through 2023, rather than paying all Plan expenses as first discretionarily permitted, and then required, by the Plan:

| Forfeitures Used for Employer's Benefit | | | | | | |
|---|---|---|---|---|---|---|
| | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** |
| **Forfeitures Used to Reduce Employer Contributions** | $2,149,239 | $5,256,935 | $4,895,153 | $5,626,857 | $3,513,392 | $5,107,012 |
| *Compounding Percentage (Plan Return)* | | 22.37% | 11.86% | 16.44% | -14.97% | 17.17% |
| **Potential Cumulative Compounded Losses** | $2,149,239 | $7,887,060 | $13,717,239 | $21,598,716 | $21,878,933 | $30,741,577 |
| **Sources:** | 2018 Form 5500, Page 29 of 40 | 2019 Form 5500, Page 29 of 40 | 2020 Form 5500, Page 29 of 40 | 2021 Form 5500, Page 32 of 43 | 2022 Form 5500, Page 30 of 38 | 2023 Form 5500, Page 31 of 40 |

72.     ERISA explicitly requires Plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

73.     Furthermore, in deciding to use Plan forfeiture to benefit itself as far as reducing future company contributions through use of plan assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates both the ERISA party-in-interest and fiduciary prohibited transaction rules under 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b).

74.     Plan assets in trust should have been used for the exclusive purpose for which they were contributed in the first place: for the benefit of Plan participants through the reduction of their Plan expenses.

75.    Defendants should have allocated this forfeiture money to pay Plan expenses, as first permitted and then required by the Plan, and then Plan participants would have been better off.

76.    On the other hand, using the forfeitures to reduce future Employer contributions is always in the best interest of Pearson because that option decreases Pearson's own contribution costs.

77.    Although it is possible that reducing employer contributions may be in the best interests of participants where there is a risk that Pearson may be financially unable to satisfy its matching or discretionary contribution obligations, there is no evidence that Pearson had such financial inability.

78.    Absent a risk that Pearson would be unable to satisfy its contribution obligations under the Plan, however, using forfeitures to "pay plan expenses" would be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such expenses.

79.    In deciding between using the forfeiture to benefit Pearson or using the forfeitures to benefit the participants, Defendants are presented with a conflict of interest in administering the Plan and managing and disposing of its assets.

80.    While Defendants' decisions to use the Plan's forfeitures to reduce its outstanding and unpaid contributions benefitted the Company by lowering its costs, it harmed the Plan, along with its participants and beneficiaries, by reducing the amount of assets the Plan otherwise would have received and by causing deductions from participants' accounts to cover expenses that otherwise would have been covered in whole or in part by Plan forfeitures.

81.    The Plan Committee used Plan forfeitures to offset Pearson's non-elective mandatory contributions such that the Plan received fewer non-elective contributions than Pearson promised to pay the Plan.

82.    The deduction of plan administrative expenses from the participants' accounts reduces the funds available to participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

83.    In so doing, Defendants breached their fiduciary duty of loyalty to the Plan, and cost the Plaintiffs and class members tens of millions of dollars of lost retirement income.

84.    The forfeiture money should not have been used to benefit Pearson through reduced Plan employer contributions and instead, should have been reallocated to Plan participant accounts to pay Plan expenses.

85.    Effective January 1, 2022, under the backdated Plan Amendment 2024-1, the Plan Committee was *required under express Plan language* to pay Plan expenses first.

86.    Because ERISA provides that "a fiduciary shall discharge his duties "(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]," ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), the Plan Committee also violated its fiduciary duties from January 1, 2022, onwards, by failing to pay Plan expenses first before using Plan forfeitures to reduce their own company."

87.    Plan Amendment 2024-1 specifically requires that "The amount forfeited will be used (i) *first, to pay Plan expenses*, [and] (ii) second, to the extent that such amount forfeited cannot be used in accordance with (i) above, to reduce future Employer contributions under Section 4.2."

88.    There is no reason that the forfeited amounts could not have been used to pay Plan expenses, as Plaintiffs and other class members where charged on a quarterly basis for "Plan Administration Participant Account Fees," "Participant Account Maintenance Fees," "Managed Account Service Fees," and various fees for individual transactions.

89.    ERISA also provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

90.    Despite the conflict of interest presented by the decision to use Plan forfeitures for Pearson's own benefit, Defendants failed to undertake any prudent investigation into which option the most prudent action to take.

91.    Defendants did not, for example, investigate whether there was a risk that Pearson would default on its Plan contributions if forfeitures were used to pay Plan expenses, or evaluate

whether there were sufficient forfeitures to eliminate the Plan expenses charged to participants and still offset a portion of Pearson's own contribution obligations, as a prudent person would have done.

92.    Defendants also failed to consult with independent non-conflicted decisionmakers to advise them in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done.

93.    Instead, Defendants have consistently and reflexively chosen to use the forfeitures for their own interest, to the detriment of the Plan and its participants, by allocating all forfeitures toward reducing Pearson's outstanding and unpaid contributions owing to the Plan.

94.    For each year between 2018 and 2023, Pearson was under no risk of defaulting on its contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently based the decision of how to allocate forfeitures solely on their own self-interest and failed to consider the interests of the Plan and its participants.

95.    At the very least, Defendants should have used the fiduciary discretion granted to it prior to January 1, 2022, to pay Plan administration expenses first. After January 1, 2022, the Plan *required* the Plan Committee to pay Plan expenses first and yet, it did not do so, costing Plan participants over $12 million dollars from 20128 through 2023:

**Forfeitures Not Used for Direct Plan Expenses** *(Disloyal Discretion)*

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| Minimum Forfeitures Available to offset Plan Expenses | $2,149,239 | $5,256,935 | $4,895,153 | $5,626,857 | $3,513,392 | $5,107,012 |
| Total Direct Compensation | $1,373,375 | $1,310,076 | $1,512,470 | $2,090,076 | $1,983,482 | $1,995,446 |
| Forfeitures used to pay Plan Expenses | $0 | $0 | $0 | $0 | $0 | |
| Potential Losses | $1,373,375 | $1,310,076 | $1,512,470 | $2,090,076 | $1,983,482 | $1,995,446 |
| Compounding Percentage (Plan Return) | | 22.37% | 11.86% | 16.44% | -14.97% | 17.17% |
| Potential Cumulative Compounded Losses | $1,373,375 | $2,990,740 | $4,857,768 | $7,746,286 | $8,570,204 | $12,036,769 |

96.    These breaches of the duty of loyalty, prudence, and failure to follow documents, as well as the various prohibited transactions, cost the Plaintiffs and class members tens of millions of dollars in lost Plan assets that should have been used to pay off Plan expenses.

**C.    Defendants Paid Excessive Managed Account  Service Fees.**

97.    The key characteristics of managed account (MA) services are: (1) participants turn over investment discretion to the advice provider; (2) the provider assumes responsibility for the asset allocation and selection decisions, generally utilizing investment options offered with the plan; and (3) decisions are based on information provided to the provider by the plan sponsor and/or recordkeeper, as well as through interaction with the participant (this information may include investment objectives, risk preferences, and investments held outside the defined contribution plan).

98.    The Pearson Plan provided a managed account (MA) service, the Professional Management Program ("PMP"), through Empower's wholly-owned subsidiary, Empower Advisory Group ("EAG").

99.    In turn, EAG is sub-advised by Edelman Financial Engines ("FE").

100.    The MA services provided by Financial Engines to plans are materially the same whether provided directly by Financial Engines or whether they sub-advise through another entity like EAG.

101.    Indeed, MA services provided by Financial Engines are not only materially the same if provided directly by FE directly or where FE subadvises through another entity, but those MA services are the materially the same across different Plans that receive FE-based managed account services.

102.    Indeed, FE provides MA services and strategies distinctive from its two main competitors, Morningstar and Fidelity

103.    EAG/FE, unlike Morningstar and Fidelity do not provide services based on a model portfolio. Instead, EAG/FE uses each plans' designated investment alternatives ("QDIAs") to build portfolios for each participant to the extent they do not personalize their MA accounts.

104.    Those services, which Pearson MA participants received through EAG/FE, include providing managed account service based on:

(a)    participant's selected retirement age and selected risk preferences;

(b)    outside account composition; and

(c)    other factors such as gender, income, and savings.

105.    As with comparator plans receiving managed account services, investment selection for MAs is primarily based on two factors: (1) the plan line-up made available by the Plan Committee from which the MA provider can select; and (2) the MA provider's methodology for analyzing and selecting among strategies.

106.    Across service plans, and to the extent participants provide personalized information, FE will primarily select the passive managers in a given plan, and the primary drivers of portfolio selection will be fees, turnover, and analysis of representative asset classes. FE will attempt to continue to hold investments a participant already holds.

107.    EAG, powered by FE, sets the default risk level at the median risk level of peer participants with the same number of years to retirement, though participants may customize risk setting to fall between 30th and 70th percentiles.

108.    For the participant's given level or risk, EAG/FE runs a mean-variance optimization (MVO) using the investment options in the Plan's menu. The portfolio with the least amount of trading to implement is selections.

109.    Because the MA services provided by EAG/FE to Pearson are materially similar to other MA services provided by FE to comparator plans, whether directly provided by FE or through a sub-advisor relationship, the costs of FE MA services are materially similar for plans which have a similar number of Plan participants and assets.

110.    Yet, Defendants paid unreasonable compensation for MA fees to EAG/FE when compared to similarly-sized plans receiving materially similar MA services from FE.

111.    According to Pearson Plan Annual Fee Disclosure Statements for Participants, as of October 26, 2022, and November 27, 2023, the PMP MA advisory fee is "[u]p to $100K = 0.150000% quarterly (or .60% annually), [n]ext $150K = 0.112500% quarterly (or .45% annually), [o]ver $250K = 0.075000% quarterly (or .30% annually)."

112.    More specifically, the following figures for the comparator plans are taken directly from the comparator plans' Fee Disclosures to Participants and show how much less they paid for materially similar MA services from Financial Engines:

**Lenovo:**

| Professional Management Fees | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$5,000** | 0.00% of this balance |
| For the balance between **$5,000 and $100,000 you'll pay** | 0.35% of this balance |
| For the balance between **$100,000.01 and $250,000 you'll pay:** | 0.25% of this balance |
| For the balance greater than **$250,000 you'll pay:** | 0.10% of this balance |

**PG&E:**

| Professional Management Fees – Effective July 1, 2020 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For all assets: | 0.32% of this balance |

**BlueCross Blue Shield of SC:**

| Professional Management Fees | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$100,000 you'll pay:** | 0.30% of this balance |
| For the balance between **$100,000.01 and $250,000 you'll pay:** | 0.20% of this balance |
| For the balance greater than **$250,000 you'll pay:** | 0.15% of this balance |

**Sony:**

| Professional Management Fees | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$250,000 you'll pay:** | 0.30% of this balance |
| For the balance greater than **$250,000 you'll pay:** | 0.25% of this balance |

**Beaumont:**

| Professional Management Fees – Rates Effective January 1, 2017 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$5,000 you'll pay:** | 0.00% of this balance |
| For the balance between **$5,000.01 and $50,000 you'll pay:** | 0.29% of this balance |
| For the balance between **$50,000.01 and $150,000 you'll pay:** | 0.19% of this balance |
| For the balance greater than **$150,000 you'll pay:** | 0.14% of this balance |

113.    Comparing the Pearson Plan's managed account fee rates with those of the comparator plans above, and calculating managed account fee rates based on the average account balance from 2018-2023, provides the following chart:

| Comparable Plans' Managed Account Fee Rates | | | | | |
|---|---|---|---|---|---|
| Plan | Average Assets 2018-2023 | Average Participants 2018-2023 | Average Managed Account Direct Comp 2018-2023 ($) | Calculated Fee (%) @ Avg Account Balance | Managed Account Provider |
| Lenovo Savings Plan | $2,091,625,856 | 9,370 | $521,113 | 0.287% | Financial Engines |
| PG&E Corporation Retirement Savings Plan | $3,675,381,167 | 12,495 | $2,248,443 | 0.320% | Financial Engines |
| Blue Cross Blue Shield of SC Employee Savings and Salary Reduction Plan | $1,103,906,957 | 12,798 | $967,560 | 0.300% | Financial Engines |
| **The Pearson Retirement Plan 401(K)** | **$2,288,283,864** | **17,033** | **$1,292,817** | **0.562%** | **Financial Engines** |
| Sony USA 401(K) Plan | $4,553,868,244 | 24,179 | $897,128 | 0.300% | Financial Engines |
| Beaumont Health 403(B) Retirement Savings Plan | $2,279,061,396 | 38,088 | $1,062,115 | 0.250% | Financial Engines |

114.    The average of all the comparative plan MA fees from FE is 29.1 basis points for materially similar MA services that the Pearson Plan also received:

| Comparable Plans' Managed Account Fee Rates | | | | | |
|---|---|---|---|---|---|
| Plan | Average Assets 2018-2023 | Average Participants 2018-2023 | Average Managed Account Direct Comp 2018-2023 ($) | Calculated Fee (%) @ Avg Account Balance | Managed Account Provider |
| Lenovo Savings Plan | $2,091,625,856 | 9,370 | $521,113 | 0.287% | Financial Engines |
| PG&E Corporation Retirement Savings Plan | $3,675,381,167 | 12,495 | $2,248,443 | 0.320% | Financial Engines |
| Blue Cross Blue Shield of SC Employee Savings and Salary Reduction Plan | $1,103,906,957 | 12,798 | $967,560 | 0.300% | Financial Engines |
| Sony USA 401(K) Plan | $4,553,868,244 | 24,179 | $897,128 | 0.300% | Financial Engines |
| Beaumont Health 403(B) Retirement Savings Plan | $2,279,061,396 | 38,088 | $1,062,115 | 0.250% | Financial Engines |
| | | | Average | 0.291% | |

115.    The following chart shows the breakdown of managed account fees paid by comparator plans to FE during the Class Period:

### Schedule C - Managed Account Direct Compensation

| Plan | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Total | Average |
|---|---|---|---|---|---|---|---|---|
| Lenovo Savings Plan | $512,325 | $483,031 | $500,008 | $553,433 | $545,124 | $532,759 | $3,126,680 | $521,113 |
| PG&E Corporation Retirement Savings Plan | $2,153,232 | $2,147,587 | $2,214,078 | $2,310,615 | $2,350,526 | $2,314,619 | $13,490,657 | $2,248,443 |
| Blue Cross Blue Shield of SC Employee Savings and Salary Reduction Plan | $930,246 | $881,727 | $920,537 | $1,072,356 | $1,029,834 | $970,659 | $5,805,359 | $967,560 |
| Sony USA 401(K) Plan | $926,266 | | $660,387 | $987,825 | $942,579 | $968,582 | $4,485,639 | $897,128 |
| Beaumont Health 403(B) Retirement Savings Plan | $904,819 | $931,632 | $1,001,796 | $1,193,545 | $1,188,370 | $1,152,528 | $6,372,690 | $1,062,115 |

116.    Yet, Pearson continues to pay unreasonable compensation for MA service to Financial Engines for the materially same MA services being received by these other comparator plans with similar numbers of participants and assets during the Class Period.

117.    Whereas Pearson pays on average 56.2 basis points in fees to EAG, who in turn shares those fees with FE, the comparators plans pay an average 29.1 basis points in fees either to FE directly or to an entity like EAG and FE.

### Excess Compensation over 29.1bps

| Provider | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Total |
|---|---|---|---|---|---|---|---|
| Financial Engines | $1,370,795 | $1,307,396 | $1,209,807 | $1,305,885 | $1,316,977 | $1,246,043 | $7,756,903 |
| | | | | | | | |
| Estimated Assets @ .565% | $242,618,584 | $231,397,522 | $214,125,133 | $231,130,088 | $233,093,274 | $220,538,584 | |
| Estimated Compensation at .29.1% | $706,020 | $673,367 | $623,104 | $672,589 | $678,301 | $641,767 | |
| | | | | | | | |
| Excess Compensation | $664,775 | $634,029 | $586,703 | $633,296 | $638,676 | $604,276 | |
| Compounding Percentage (Plan Return) | | 22.37% | 11.86% | 16.44% | -14.97% | 17.17% | |
| Estimated Cumulative Losses | $664,775 | $1,447,546 | $2,205,858 | $3,201,718 | $3,361,119 | $4,542,348 | |

118.    Pearson's excessive and unreasonable payments to EAG/FE for materially the same MA services provided to other plans by FE has cost Plan participants enrolled in the MA program, like Plaintiff Vaccaro, over four and half ($4.5) million dollars in lost retirement income during the Class Period.

119.    A plan fiduciary must monitor MA compensation that it pays to the MA service provider by regularly conducting an independent evaluation of those fees to ensure that such managed

account fees are reasonable, and remove or renegotiate with the MA provider if those fees are unreasonable or imprudent.

120. During the Class Period, the high cost of MA services from Financial Engines leads to the plausible inference that Defendants egregiously failed to regularly monitor the MA compensation paid to Financial Engines.

121. During the Class Period, Defendants failed to consider other alternatives to the FE service in order to avoid having Plan participants pay excessive and unreasonable MA fees.

122. During the class period, and unlike a hypothetical prudent fiduciary, Defendants followed a fiduciary process that was ineffective given the objectively unreasonable MA fees.

123. The Plan Committee, as Plan fiduciaries, should have compared the Plan PMP MA to other MAs through periodic reviews to determine whether given cost, risk, performance, and other pertinent factors, maintaining FE, at this fee level, as the Plan MA service provider was prudent.

124. During the entirety of the class period, and had Defendants engaged in regular and/or reasonable examination and competitive comparison of the total MA fees it paid to FE, it would have realized that the Plan was compensating FE unreasonably and inappropriately for its size and scale, passing these objectively unreasonable and excessive fee burdens to Plaintiff Vaccaro and other Plan participants in the PMP MA service.

125. During the entirety of the class period and by failing to recognize that the Plan and its participants were being charged much higher Plan MA fees than they should have been and/or by failing to take effective and timely remedial actions including replacing EAG/FE, Defendants breached their fiduciary duty of prudence to Plaintiff Vaccaro and to other Plan participants, causing millions of dollars of harm to their retirement accounts.

## CLASS ACTION ALLEGATIONS

126. Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(1), or, in the alternative, 23(b)(2), of the Federal Rules of Civil Procedure on behalf of the following Subclasses of similarly situated persons:

Subclass A – Forfeiture Class:

All participants in and beneficiaries of the Pearson 401(k) Plan at any time from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Defendants' breaches through the date of judgment.

Subclass B – Managed Account Class:

All participants in and beneficiaries of the Pearson 401(k) Plan who participated in the Plan managed account program at any time from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Defendants' breaches through the date of judgment

127. The members of each of the subclasses are so numerous that joinder of all members is impracticable. At all relevant times, the number of forfeiture class members was approximately seventeen thousand (17,000) or more, while the number of managed account class members was five thousand (5,000) or more.

128. Common questions of law and fact exist as to all members of each of the Subclasses. Among such questions are:

i. Whether Defendants failed in their fiduciary duties of loyalty, prudence, and to follow Plan terms, with respect to the administration, management and supervision of Plan services providers in allocating Plan forfeitures (forfeiture subclass);

ii. Whether Defendants failed in their fiduciary duty of prudence to minimize plan MA fees (managed account subclass);

iii. Whether Defendants engaged in party-in-interest or fiduciary prohibited transactions with Plan assets, by using Plan forfeitures to reduce Pearson's Plan contributions rather than reallocating those plan assets to pay Plan expenses (forfeiture subclass); and,

iv. Whether Defendants' breaches of fiduciary duties and prohibited transactions caused losses to the Plan and its participants, and if so, in what amounts (both subclasses).

129. Plaintiffs' claims are typical of the claims of the forfeiture Subclass and Plaintiff Vaccaro's managed account claims are typical of the claims of the managed account Subclass pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct for each Subclass.

130.    Plaintiffs will adequately represent the Subclasses pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plan during the class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

131.    Class certification of Plaintiffs' claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

132.    In the alternative, certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

133.    Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

134.    The claims brought by the Plaintiffs arise from fiduciary breaches and prohibited transactions as to the Plan in its entirety and does not involve mismanagement of individual accounts.

135.    The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

136.    Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

137.    Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

138.    Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at

issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**Breach of Duty of Loyalty**
**(Plaintiffs, On Behalf Of Themselves And Class,**
**Against Plan Committee – Misallocation Of Forfeitures)**

139. Plaintiffs restate the above allegations as if fully set forth herein.

140. Defendant Plan Committee is a fiduciary of the Pearson Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

141. Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendant Plan Committee was required to discharge their duties to the Pearson Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

142. Defendant Plan Committee have continually breached this duty of loyalty with respect to their control and management of the Plan's assets throughout the Class Period by choosing to utilize forfeited funds in the Plan for the sole benefit of Pearson rather than exclusively in the interest of the Plan participants and beneficiaries.

143. Instead of acting solely in the interest of Plan participants by utilizing forfeited funds in the Plan to reduce and eliminate the administrative expenses charged to their individual accounts, or provide additional allocations to Plan accounts, Defendant Plan Committee discretionarily chose, as fiduciaries, to use Plan assets for the exclusive purpose of reducing Pearson's outstanding and future contributions to the Plan, thereby saving Pearson tens of millions of dollars at the expense of the Plan and its participants.

144. In making this decision, Defendant Plan Committee was motivated primarily or exclusively by their own self-interest rather than the interests of the Plan's participants and beneficiaries.

145. As a direct and proximate result of Defendant Plan Committee's fiduciary breaches described herein, the Plan suffered injury and loss for which it is personally liable and is subject to

appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

146.   Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**SECOND CLAIM FOR RELIEF**
**Breach of Duty of Prudence**
**(Plaintiffs, On Behalf Of Themselves and Class, Against**
**<u>Plan Committee – Misallocation Of Forfeitures</u>)**

147.   Plaintiffs restate the above allegations as if fully set forth herein.

148.   Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendant Plan Committee was required to discharge its duties with respect to the Pearson Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

149.   Defendant Plan Committee has continuously breached its duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the class period by declining to use the forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts, and instead used such Plan assets to reduce Pearson's own future contributions to the Plan.

150.   In deciding how to allocate forfeitures, Defendant Plan Committee utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendant Plan Committee failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plan to reduce the Company's own future contribution expenses, as opposed to the administrative expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

151.    By refusing to use forfeited funds in the Plan to eliminate the Plan expenses charged to participant accounts, and instead deciding to use these Plan assets to reduce Pearson's own future contribution expenses, Defendant Plan Committee caused the Plan to receive fewer contributions that would otherwise have increased Plan assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses.

152.    As a direct and proximate result of Defendant Plan Committee's fiduciary breaches described herein, the Plan suffered injury and loss for which Defendant Plan Committee is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

153.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

### THIRD CLAIM FOR RELIEF
### Failure to Follow Plan Documents
### (Plaintiffs, On Behalf Of Themselves and Class, Against Plan Committee– Misallocation Of Forfeitures)

154.    Plaintiff restates the above allegations as if fully set forth herein.

155.    Fiduciary provisions under ERISA require "a fiduciary [to] discharge his duties with respect to a plan solely in the interest of participants and beneficiaries and—. . . (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."  29 U.S.C. § 1104(a)(1)(D).

156.    The Plan Committee violated its fiduciary duties from January 1, 2022, onwards, by failing to pay Plan expenses first before using Plan forfeitures to reduce their own company.

157.    Plan Amendment 2024-1 specifically requires that "The amount forfeited will be used (i) *first, to pay Plan expenses*, [and] (ii) second, to the extent that such amount forfeited cannot be used in accordance with (i) above, to reduce future Employer contributions under Section 4.2." (emphasis added).

158.    There is no reason that the forfeited amounts could not have been used to pay Plan expenses, as Plaintiffs and other class members where charged on a quarterly basis for "Plan Administration Participant Account Fees," "Participant Account Maintenance Fees," "Managed Account Service Fees," and various fees for individual transactions.

159.    Defendants use of Plan forfeitures was inconsistent with the Plan document and, therefore, amounted to a fiduciary breach pursuant to 29 U.S.C. § 1104(a)(1)(D).

160.    As a direct and proximate result of Defendants Plan Committee's fiduciary breaches, the Plan suffered injury and loss for which Defendant Plan Committee is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

161.    The Plan Committee knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**FOURTH CLAIM FOR RELIEF**
**Fiduciary Prohibited Transactions**
**(Plaintiffs, On Behalf Of Themselves and Class,**
**Against Plan Committee – Self-Dealing With Forfeitures)**

162.    Plaintiffs restate the above allegations as if fully set forth herein.

163.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

164. Defendant Plan Committee violated this prohibition in its management and control of forfeiture funds in the Plan. By allocating these Plan assets toward offsetting Pearson's future contributions owing to the Plan, thereby saving Pearson tens of millions of dollars in contribution expenses, Defendant Plan Committee dealt with the assets of the Plan in their own interest and for their own account.

165. As a result of this prohibited conduct, Defendant Plan Committee caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer future contributions and the lost investment returns on those assets.

166. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

**FIFTH CLAIM FOR RELIEF**
**Party-In-Interest Prohibited Transactions**
**(Plaintiffs, On Behalf Of Themselves and Class,**
**Against Plan Committee –  Benefitting Employer)**

167. Plaintiffs restate the above allegations as if fully set forth herein.

168. 29 U.S.C. § 1106(a)(1)(D) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect - transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

169. Defendant Plan Committee, as fiduciaries of the Pearson Plan, caused the Plan to engage in a transaction that used the assets of Plan for the benefit of a party in interest, Pearson, by using Plan forfeitures to reduce the future employer contributions of Pearson.

170. There is no exemption to the prohibited transaction of a Plan fiduciary using plan assets to benefit a party-in-interest, like the employer.

171. By allocating Plan forfeitures to be used for the benefit of reducing future employer contributions, the Plan Committee misused tens of millions of dollars of Plan forfeitures which could have been reallocated instead to Plan participant's accounts.

172.    Defendant Plan Committee and its members are personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the improper use of Plan assets, and is subject to other equitable or remedial relief as appropriate.

173.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

**SIXTH CLAIM FOR RELIEF**
**Failure to Adequately Monitor Other Fiduciaries**
**(Plaintiffs, on behalf of Themselves and Class,**
<u>**Against Defendant Pearson  – Misallocation of Forfeitures**</u>**)**

174.    Plaintiffs restate the above allegations as if fully set forth herein.

175.    Defendant Pearson had the authority to appoint and remove members or individuals responsible for Plan forfeitures on the Plan Committee and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

176.    In light of this authority, Defendant Pearson had a duty to monitor those individuals responsible for Plan forfeitures on the Plan Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Pearson Plan in the event that these individuals were not fulfilling those duties.

177.    Defendant Pearson had a duty to ensure that the individuals responsible for Plan forfeitures possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Pearson Plan's forfeitures; and reported regularly to Defendant Pearson.

178.    The objectively disloyal, imprudent, and conflicted manner in which Defendant Plan Committee handled Plan forfeitures inferentially establish that Defendant Pearson breached their duty to monitor by, among other things:

(a)    Failing to monitor and evaluate the performance of individuals responsible for Plan forfeitures on the Plan Committee or have a system in place for doing so, standing idly by as the Pearson Plan misallocated Plan forfeiture for Pearson's benefit;

(b)    Failing to monitor the process by which the Plan Committee was evaluated and failing to investigate the proper use of Plan forfeitures; and

(c)    Failing to remove individuals responsible for Plan forfeitures on the Plan Committee whose performance was inadequate in that these individuals continued to misallocate Plan forfeitures for the benefit of Pearson.

179.    As the consequences of the breaches of the duty to monitor for Plan forfeitures, the Plaintiffs and Plan participants suffered tens of millions of dollars of objectively unreasonable and unnecessary monetary losses.

180.    Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendant Pearson is liable to restore to the Pearson Plan all losses caused by their failure to adequately monitor individuals responsible for Plan forfeitures on the Plan Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Duty of Prudence of ERISA, as Amended**
**(Plaintiffs, on Behalf of Themselves and Class, Against**
**Plan Committee – Excessive Managed Account Fees)**

181.    Plaintiffs restate the above allegations as if fully set forth herein.

182.    Defendant Plan Committee is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

183.    29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendant Plan Committee in its administration of the Plan.

184.    Defendant Plan Committee, as a fiduciary of the Plan, is responsible for selecting MA providers that charge objectively reasonable managed account fees.

185.    During the Class Period, Defendant Plan Committee had a fiduciary duty to do all of the following: ensure that the Plan's managed account fees were objectively reasonable; defray

reasonable expenses of administering the Plan; and act with the care, skill, diligence, and prudence required by ERISA.

186.  During the Class Period, Defendant Plan Committee breached their fiduciary duty of prudence to Plan participants, including to Plaintiffs, by failing to: ensure that the Plan's managed account fees were objectively reasonable, defray reasonable expenses of administering the Plan, and act with the care, skill, diligence, and prudence required by ERISA.

187.  During the Class Period, Defendant Plan Committee further had a continuing duty to regularly monitor and evaluate the Plan's managed account providers, EAG/Financial Engines, to make sure they were providing the managed account services at reasonable costs, given the highly competitive market surrounding managed account services and the enormous bargaining power the Plan had to negotiate the best fees, and replace the imprudent managed account service with less expensive services.

188.  During the Class Period, Defendant Plan Committee breached its duty to Plan participants, including to Plaintiffs, by failing to employ a prudent process and by failing to evaluate the cost of the Plan's managed account service critically or objectively in comparison to other MA options available to the Plan.

189.  Defendant Plan Committee's failure to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

190.  As a result of Defendant Plan Committee's breach of fiduciary duty of prudence with respect to the Plan, the Plaintiffs and Plan participants suffered millions of dollars in objectively unreasonable and unnecessary monetary losses.

191.  Defendant Plan Committee is liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Pearson Plan the losses resulting from the breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from

the breaches of fiduciary duties alleged in this Count. In addition, Defendant Plan Committee is subject to other equitable relief as set forth in the Prayer for Relief.

**EIGHTH CLAIM FOR RELIEF**
**Failure to Adequately Monitor Other Fiduciaries under ERISA, as Amended**
**(Plaintiffs, on Behalf of Themselves and Class, Against**
**Defendant Pearson – Managed Account Fees)**

192. Plaintiffs restate the above allegations as if fully set forth herein.

193. Defendant Pearson had the authority to appoint and remove members or individuals responsible for managed accounts on the Plan Committee and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

194. In light of this authority, Defendant Pearson had a duty to monitor those individuals responsible for managed account fees on the Plan Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

195. Defendant Pearson had a duty to ensure that the individuals responsible for managed account fees possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to managed account fees; and reported regularly to Defendant Pearson.

196. The objectively unreasonable and excessive managed account fees paid by the Plan by having EAG/Financial Engines' managed account program inferentially establish that Defendant Pearson breached its duty to monitor by, among other things:

(a) Failing to monitor and evaluate the performance of individuals responsible for managed account fees on the Plan Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses in the form of objectively unreasonably managed account fees;

(b) Failing to monitor the process by which the Plan's MA providers, EAG/ Financial Engines, were evaluated and failing to investigate the availability of more reasonably-priced MA service alternatives; and

(c) Failing to remove individuals responsible for managed account fees on the Plan Committee whose performance was inadequate in that these individuals

33

continued to pay the same managed account fees over numerous years even though the contracted price was imprudent and excessively costly, given the lack of value associated with the EAG and Financial Engines managed account program.

197. As a consequence of the breach of the duty to monitor the Plan's managed account fees, the Plaintiffs and Plan participants suffered millions of dollars of objectively unreasonable and unnecessary monetary losses.

198. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendant Pearson is liable to restore to the Pearson Plan all losses caused by its failure to adequately monitor individuals responsible for Plan managed account fees on the Plan Committee. In addition, Plaintiffs and the Class are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

WHEREFORE, Plaintiffs pray that judgment be entered and requests the following relief:

A. A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C. A Declaration the Defendants are fiduciaries, have breached their fiduciary duties of prudence under ERISA, and engaged in fiduciary prohibited transactions, causing harm to Plan participants and beneficiaries;

D. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' fiduciary breaches and prohibited transactions, including restoring to the Plan all losses resulting from using Plan forfeitures to inappropriately benefit Pearson by reducing their future employer contributions, and restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Participants would have made if the Defendants had not engaged in fiduciary breaches or prohibited transactions;

E. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breach of the fiduciary duty prudence by paying excessive managed account fees, and restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations;

F. An Order requiring Pearson to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Pearson as necessary to effectuate relief, and to prevent Pearson's unjust enrichment;

G.     An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties, only with regard to Plan forfeitures.

H.     Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary/consultant or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties with regard to Plan forfeitures;

I.     An award of pre-judgment interest;

J.     An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

K.     Such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Date: March 21, 2025              **WALCHESKE & LUZI, LLC**

***/s/ Paul M. Secunda***
Paul M. Secunda (admitted *pro hac vice*)
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

**SCHNEIDER WALLACE COTTRELL KONECKY LLP**

James A. Bloom (motion *pro hac vice* pending)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel.: (415) 421-7100
jbloom@schneiderwallace.com

Peter Brian Schneider
3700 Buffalo Speedway, Suite 960
Houston, TX 77098
Tel: (713) 338-2560
pschneider@schneiderwallace.com

*Attorneys for Plaintiffs and Proposed Class*